Chief Judge KOZINSKI,
dissenting:
The Supreme Court has described reasonable suspicion as “some minimal level of objective justification” that is “obviously less demanding” than probable cause. United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)). My colleagues purport to apply this standard but, in fact, honor it in the breach.
In Sokolow, the Court found reasonable suspicion to detain a man so that his luggage could be sniffed by a drug dog, just as in our case. Sokolow waited for the dog for three hours, six times as long as Motley. 490 U.S. at 5, 109 S.Ct. 1581. Sokolow was traveling from Honolulu to Miami under a fake name for two days in July. Id. at 3, 5,109 S.Ct. 1581. He bought his ticket with cash, checked no luggage and appeared nervous. Id. The Court recognized that “[a]ny one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel.” Id. at 9, 109 S.Ct. 1581. Still, the Court explained, the facts “taken together ... amount to reasonable suspicion” that Soko-low was carrying narcotics. Id. at 9, 109 S.Ct. 1581.
The majority works hard to come up with possible innocent explanations for Motley’s odd behavior, like maybe he was able to maintain his extravagant lifestyle through luck or skill at gambling. Maj. at 448. And Sokolow could have been traveling to Miami under a false name in the middle of the summer because he needed embarrassing surgery. 490 U.S. at 8, 109 S.Ct. 1581. Particularly risible is the majority’s intimation that Motley might have broken into his room safe because he got tired of waiting for maintenance to show up. No doubt hotel guests tear open their room safes every day because of lazy locksmiths; it must be a leading source of lost revenue for the hotel industry.
The hotel where Motley was living and gambling gave him its highest grade for gamblers, Seven Stars. It had every reason to avoid losing a high roller who was a steady source of profit, and certainly would have been very careful to avoid exaggerating or making up incriminating facts. That alone gives the security director’s report to the police sufficient weight to provide a “minimal level of objective justification.” 490 U.S. at 7, 109 S.Ct. 1581 (quoting Delgado, 466 U.S. at 217,104 S.Ct. 1758).
The majority also works hard to undermine the reliability of the informant, maj. at 447-48, and I agree that he could have been more reliable. But what my colleagues overlook is that, had the informant been reliable, the tip alone would have provided probable cause, not merely reasonable suspicion. No matter how much we discount the informant’s story, even the majority admits it must be given some weight. Maj. at 447 (“little weight”); id. at 7, 109 S.Ct. 1581 (“minimal weight”). And that weight cannot be further discounted as having a possible innocent explanation. When we take that “little weight” or “minimal weight” and add it to the information from the hotel security director, the police here certainly had as much or more than, say, in Terry v. Ohio, where all they knew was that the suspect had walked up and down the block a few times and looked into a store window. 392 *450 U.S. 1, 6, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
We got reversed in Sokolow for doing precisely what we’re doing today. It could happen again and this time there may not even be the comfort of a dissent.